UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

SUBPOENA UPON NEJAME LAW, P.A.,
a non-party in an action pending in the
U.S. District Court for the Northern District
of Illinois entitled FIRST FARMERS
FINANCIAL LITIGATION

Case No: 6:16-mc-8-Orl-41TBS

_____

# ORDER

This case was opened by NeJame Law, P.A., to quash a subpoena served on it by Patrick Cavanaugh as Overall Receiver of the Overall Receivership Estate in Case No. 14-cv-7581, now pending in the United States District Court for the Northern District of Illinois. The Overall Receiver asks that the dispute be transferred to the Northern District of Illinois. In making its findings, the Court has considered the arguments and evidence contained in the following motion papers:

- NeJame Law P.A.'s Rule 45 Motion to Quash a Subpoena to Produce Documents and Electronically Stored Information (Doc. 1);

- Motion to Transfer Subpoena Dispute (Doc. 3);

- Overall Receiver's Notice of Filing in Support of Motion to Transfer Subpoena Dispute (Doc. 5);

- NeJame Law P.A.'s Combined Response to Overall Receiver's Motions to Extend Time to Respond and to Transfer NeJame's Rule 45 Motion to Quash Subpoena to the Northern District of Illinois (Doc. 6);

- Overall Receiver's Response in Opposition to NeJame Law P.A.'s Rule 45 Motion to Quash a Subpoena to Produce Documents and Electronically Stored Information (Doc. 10);

- Overall Receiver's Reply to NeJame Law P.A.'s Combined Response to Overall Receiver's Motions to Extend Time to Respond and to Transfer NeJame's Rule 45 Motion to Quash (Doc. 13);

- NeJame Law P.A.'s Reply in Support of its Rule 45 Motion to Quash (Doc. 14); and

- NeJame Law P.A.'s Amended Reply in Support of its Rule 45 Motion to Quash (Doc. 15).

## I. Background

The United States of America alleges that Nikesh Patel ("Patel") and Timothy Fisher, through the use of corporate entities including First Famers Financial, LLC ("First Farmers"), illegally obtained millions of dollars from the sale of fictitious loans purportedly guaranteed by the U.S. Small Business Administration or the U.S. Department of Agriculture Rural Development program (Doc. 3 at 2). The United States Attorney for the Northern District of Illinois filed an information charging Patel for his role in the scheme, and he was arrested in the Middle District of Florida in September, 2014 (Doc. 1, ¶ 1).

On September 29, 2014, Pennant Management, Inc. ("Pennant"), filed a civil suit against Patel, other individuals, and numerous Patel related corporate entities in the United States District Court for the Northern District of Illinois (Doc. 10 at 3; Doc. 10-2 at 2). Hereafter, the corporate entities named as defendants in the Illinois civil case are referred to collectively as the "Entity Defendants," and the Entity Defendants, together with Patel and the other individual defendants are referred to collectively as the "Patel Defendants."

Following his arrest, Patel hired NeJame Law, P.A., to represent the Patel Defendants (Doc. 1, ¶ 2). NeJame Law is a professional association organized under the laws of the state of Florida with its sole office in Orlando, Florida (Id. at ¶ 4). The firm and its attorneys reside, are employed, and regularly transact their business in the Middle

District of Florida (Id.).   This is the first and only case in which the firm has appeared in any state or federal court in Illinois (Id. at ¶ 7).   At least four NeJame Law attorneys filed notices of appearance and were admitted *pro hac vice* in the Northern District of Illinois where they assumed the role of lead counsel in the criminal and civil cases (Id.).   For its fee, NeJame Law was paid money and received the deed to the property ("Property") located at 7411 International Drive, Orlando, Florida (Doc. 1, ¶ 10).

Pennant negotiated with the Patel Defendants the entry of a preliminary injunction to freeze their assets in the civil case (Doc. 10 at 8-9).   The injunction, entered on October 14, 2014, enjoined the Patel Defendants from transferring the Property "subject to Defendants' ability to quitclaim this property to NeJame Law without prejudice to [Pennant's] right to seek to have that quitclaim deed rescinded to the extent said property was acquired with proceeds of Defendants' fraud."   (Id. at 9-10).   On October 16, 2014, Patel deeded the Property to NeJame Law (Doc. 1, ¶ 11).

On November 10, 2014, the Illinois court entered an agreed order in the civil case, appointing Michael M. Nanosky as receiver (the "Nanosky Receiver") to exercise control over the Patel Defendants' assets (Doc. 10-3 at 2-3).   On April 23, 2015, the same court entered an amended order splitting management of the Patel Defendants' assets into two separate receivership estates (Id. at 3).   The amended order also appointed Patrick Cavanaugh as Overall Receiver of the Overall Receivership Estate (Id. at 3, 16).   The Overall Receivership Estate is comprised of all the Patel Defendants' assets other than certain assets that were left under the control of the Nanosky Receiver (Id. at 3).

The Overall Receiver's duties include bringing actions to recover assets belonging to the Overall Receivership Estate (Id. at ¶ 26(f)).   Based on his investigation, the Overall

Receiver believes Patel acquired the Property by fraud[1] (Id. at 7). To date the Overall Receiver has not brought an action to avoid the conveyance of the Property to NeJame Law (Doc. 1, ¶¶ 10-12). But, NeJame Law suspects the subpoena is in the nature of pre-suit discovery, and that an avoidance action is in the works (Id. at ¶ 10). NeJame Law has submitted a proof of claim in the civil case to reserve its right to defend against any attempt by the Overall Receiver to avoid the transfers that the Patel Defendants and related entities made to it. NeJame Law has requested permission to intervene in the civil case for purposes of contesting the Overall Receiver's request to extend the scope of the Overall Receivership (Id. at 10). It has also retained the Baker & Hostetler firm to represent it in the civil case in Illinois (Doc. 3 at 5).

In December 2014, Patel retained Chicago based counsel and NeJame Law shifted into the role of consulting counsel in the criminal and civil cases (Id. at ¶ 2). NeJame Law continued in this capacity until the middle of January 2016 (Id.). The Court does not know whether NeJame Law continues to represent any of the Patel Defendants or if it does, what the scope of that representation is.

On June 26, 2015, the Overall Receiver was granted authority to issue and serve subpoenas on third parties to discover information concerning receivership assets (Doc. 10-2). On July 17, 2015, the court granted the Overall Receiver authority to waive the Entity Defendants' attorney-client and work-product privileges with respect to the Entity

---

[1] The Overall Receiver alleges that Patel used a straw buyer, Medical Investment Holdings, III, LLC ("MIH") to acquire control of the Property (Id.). MIH was ostensibly managed by Patel Defendant Niraj Patel ("Niraj") (Id.). Patel, Niraj, First Farmers, and MIH are accused of using a forged letter written on Wells Fargo letterhead and a fictitious long-term lease for the Property with Blue Cross Blue Shield of Florida to arrange a $2 million loan from Legance Bank to MIH to fund the purchase of the Property (Id.). This was a bridge loan that was replaced by another bridge loan from Wing Finance ("Wing"). To pay the Wing loan, First Farmers allegedly sold three fictitious USDA loans to Banes Capital Group, LLC ("Banes"), which eventually demanded that First Farmers repurchase the loans. Patel allegedly caused First Farmers to sell fictitious USDA loans to Pennant to generate money to pay Banes (Id.).

Defendants' communications with outside retained counsel, William R. Huseman, P.A. (Doc. 10-1). In its order, the court explained that the Overall Receiver and Nanosky Receiver exercise control over the Entity Defendants such that they functionally serve as the management of the Entity Defendants (Id. at 3).

On January 21, 2016, the Overall Receiver served the subpoena on NeJame Law in Orlando, Florida (Doc. 1-1). The subpoena requires the production of 24 categories of documents in Chicago, Illinois on February 2, 2016 at 12:00 p.m. (Id. at 1). The subpoena appears to have been drafted to be as broad as possible. For instance, a rider lists 74 individuals and corporate entities, together with "their parents, subsidiaries, predecessors, divisions, affiliates, officers, directors, members, employees, accountants, attorneys, representatives and agents, or anyone else acting on their behalf" who are included within the scope of the subpoena (Id. at 9). The subpoena also defines certain terms including "Relating to," "Related to," "Communication," and "Documents" in a manner that appears intended to make it all encompassing (Id. at ¶¶ 8-10). On February 1, 2016, NeJame Law filed this action to quash the subpoena (Doc. 1, ¶ 5). The Overall Receiver has motioned the Court to transfer the dispute to the District Court for the Northern District of Illinois pursuant to FED. R. CIV. P. 45(f) (Doc. 3). Both motions have been fully briefed and are ripe for decision.

## II. Standards

Under Rule 45 of the Federal Rules of Civil Procedure, parties may command a nonparty to, *inter alia*, produce documents, electronically stored information, or tangible things in that person's possession, custody, or control for inspection, copying, testing, or sampling. FED. R. CIV. P. 45(a)(1)(A)(iii), (a)(1)(D). A subpoena must state the court from which it issued, the title of the action, the civil-action number, and set out the text of

Rules 45(d) and (e). Fed. R. Civ. P. 45(a)(1)(A). A subpoena may command the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). When "the subpoena commands the production of documents, electronically stored information, or tangible things … before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The Committee's reasoning is evident: local nonparties should be burdened as little as practicable by litigation in which they are not involved, and local resolution of the motion will typically impose a lighter burden." Woods ex rel. U.S. v. SouthernCare, Inc., 303 F.R.D. 405, 407-08 (N.D. Ala. 2014).

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). "The party seeking to quash a subpoena bears the burden of establishing at least one of the requirements articulated under Rule 45(d)(3)." Malibu Media, LLC v. Doe, No. 8:14-CV-2351-T-36AEP, 2015 WL 574274, at *3 (M.D. Fla. Feb. 11, 2015) (citing Indep. Mktg. Group., Inc. v. Keen, No. 3:11-cv-447-J-25MCR, 2012 WL 512948, at *2 (M.D. Fla. Feb.16, 2012)).

A court may transfer a subpoena-related motion to the issuing court "if the person subject to the subpoena consents or if the court finds exceptional circumstances." FED. R. CIV. P. 45(f). According to the Advisory Committee, exceptional circumstances may include "to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." FED. R. CIV. P. 45(f) advisory committee's note (2013). At least one court has found that exceptional circumstances may exist (1) when the issuing court has already ruled on issues presented by the motion, and (2) when the same discovery issues are likely to arise in multiple districts. The Dispatch Printing Co. v. Zuckerman, No. 16-CV-80037-BLOOMVALLE, 2016 WL 335753, at *2 (S.D. Fla. Jan. 27, 2016) (citing Judicial Watch, Inc. v. Valle Del Sol, Inc., 307 F.R.D. 30, 34 (D.D.C. 2014)). "Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." FED. R. CIV. P. 45(f) advisory committee's note (2013 amendments). Accordingly, the Court must apply a balancing test when analyzing the issues raised in the motion to transfer.

### III. Discussion

The subpoena is subject to being modified or quashed because it requires compliance beyond the 100 mile geographic limit established by Rule 45(c)(2)(A). The Overall Receiver concedes error but says that if he had known NeJame Law objected on this ground, he would have agreed to modify the subpoena to provide for a local production of the documents (Doc. 10 at 13). The Overall Receiver argues that this could have been accomplished if NeJame Law had complied with M.D. FLA. Rule 3.01(g) before the motion to quash was filed (Id.).

Local Rule 3.01(g) provides that "[b]efore filing any motion in a civil case, except [for specific motions not at issue here], the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion …." M.D. FLA. R. 3.01(g). NeJame Law argues that the Rule does not apply because its motion to quash instituted a new action or case (Doc. 6, ¶ 6). The Overall Receiver cites Tropical Mktg. & Consulting, LLC v. Glock, Inc., No. 6:12-cv-1388-Orl-36TBS, 2012 WL 5431002 (M.D. Fla. Nov. 7, 2012), for the proposition that Rule 3.01(g) applies to nonparty motions to quash subpoenas (Doc. 10 at 12). In Tropical, counsel for the nonparty attempted to confer with the attorney who issued the subpoena before filing an untimely motion to quash. The Court correctly noted that attempts to confer are insufficient to comply with Rule 3.01(g). Tropical, 6:12-mc-90-Orl-28GJK (Doc. 2). But, the Court never addressed the question whether a nonparty must comply with Rule 3.01(g) before filing a motion to quash a subpoena. Id. Rule 45 does not impose a meet-and-confer requirement on non-parties before they file motions to quash subpoenas, and Rule 3.01(g) does not require a party to confer with his opponent before bringing a civil case. Accordingly, the Court finds that this action is not barred by Rule 3.01(g).

Nothing in Rule 45 contemplates or authorizes a procedure whereby a party serves an improper subpoena and then belatedly negotiates a modification to bring it into compliance with the Rule. The subpoena served on NeJame Law violates the requirements of Rule 45 and is therefore, subject to being quashed or modified to bring it into compliance with the Rule. FED. R. CIV. P. 45(d)(3)(A)(ii) (Court "must quash or modify a subpoena that … requires a person to comply beyond the geographical limits specified in Rule 45(c)."). Delay is the only thing that will be accomplished by quashing the subpoena. Accordingly, if the Court were to keep this case, it would require

modification of the subpoena.

NeJame Law argues that the subpoena should be quashed because it requires the disclosure of information protected by the attorney-client and work product privileges. Nothing prevents NeJame Law from asserting privilege with respect to any information in its possession which it believes in good faith, cannot be disclosed absent an informed waiver by the interested client(s). But, "[t]he party asserting the privilege has the burden of proving the existence of the privilege." Bozeman v. Chartis Cas. Co., No. 2:10-cv-102-FtM-36SPC, 2010 WL 4386826, at *3 (M.D. Fla. Oct. 29, 2010) (addressing attorney-client privilege). Apart from filing the motion to quash, NeJame Law has done nothing to satisfy its burden to show that any information in its possession is protected by the attorney-client or work product privileges.

The Overall Receiver argues that the Illinois court's decision authorizing him to waive the privileges with respect to communications between the Entity Defendants and William R. Huseman, P.A., constitutes an exceptional circumstance warranting transfer of the case. The Illinois court's order authorizing a limited privilege waiver by the Overall Receiver is, in this Court's view, unremarkable. The United States Supreme Court has found that the trustee of a corporation in bankruptcy has the power to waive the debtor-corporation's attorney-client privilege with respect to pre-petition communications. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 354 (1985). The Supreme Court's reasoning in Weintraub provides a solid foundation for the Illinois court's decision. Still, for whatever reason, the Overall Receiver has only sought and been granted authorization to waive privilege with respect to communications between the Entity Defendants and a specific law firm. There is no evidence that the Overall Receiver has asked for or been given authority to waive any privilege with respect to

- 9 -

communications between any of the Patel Defendants and NeJame Law.

Lastly, NeJame Law maintains that the subpoena should be quashed because the 24 categories of information sought "are, at best, tedious, repetitive and overbroad." (Doc. 1, ¶ 9). It appears that the Overall Receiver is attempting to obtain every scrap of information NeJame Law has acquired through its representation of the Patel Defendants. Still, the Court cannot say that the subpoena is "tedious," or "overbroad" because NeJame Law has neglected to identify the nature, kind, or quantity of information in its possession, how that information is stored, the difficulty, if any, in retrieving, reviewing, and producing the information, or the time and expense involved. Without knowing more than has been provided to date, the Court is unable to make an informed decision concerning the breadth and burden of the subpoena.

The Overall Receiver argues that exceptional circumstances warranting transfer of this case exist because the Illinois court has already ruled on the scope of discovery. The court which appointed the Overall Receiver has authorized him to issue subpoenas to discover information regarding "any matter that concerns the acts, conduct, property, assets, or financial condition of the Patel Defendants or any matter that affects the administration of the Estates." (Doc. 3 at 10). This authorization is consistent with the discharge of the Overall Receiver's duties and responsibilities. But, this Court does not construe it as the beginning and end of any discussion concerning the scope of discovery in a particular circumstance. In every civil case, questions concerning the scope of discovery start with FED. R. CIV. P. 26(b). Then, whether specific discovery should be permitted is decided based upon the unique facts and circumstances presented to the court. Rule 26 requires for example, consideration of relevancy and proportionality as determined by "the needs of the case, considering the importance of the issues at stake

in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Surely the Illinois court did not intend to foreclose any consideration of these concerns in connection with any subpoenas issued by the Overall Receiver. This Court fails to understand how a general grant of authority to the Overall Receiver to engage in discovery is the final word by the Illinois court on the scope of discovery, or how it makes this case exceptional.

Next, the Court considers whether transfer is appropriate to avoid "disrupting the issuing court's management of the underlying litigation." FED. R. CIV. P. 45(f) advisory committee's note (2013 amendments). The Overall Receiver has failed to articulate how or why this Court's handling of NeJame Law's motion to quash is interfering with the Illinois court's management of its case. Moreover, the parties have not informed this Court of the procedural posture of the Illinois case. This Court does not know if years remain before it is resolved, or if it is nearing disposition by motion or trial.

The Overall Receiver has issued subpoenas to an unknown number of law firms that represented some or all of the Patel Defendants. To date, only NeJame Law and Kenner & Greenfield ("K&G") have objected and moved to quash or modify the subpoenas (Doc. 5-1 at 1). K&G filed a motion in the District Court for the Northern District of Illinois, requesting that the subpoena served on it be modified or quashed because it is not reasonably limited in scope and seeks attorney-client privileged information (Id. at 2). What, if any action the court has taken on the motion is unknown. That another law firm has challenged a subpoena received from the Overall Receiver does not persuade the Court that the instant controversy is somehow disrupting or

interfering with the Illinois court's management of its case.

The Court must consider "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." Judicial Watch, Inc., 307 F.R.D. at 34. The record before the Court fails to inform it whether the Illinois court has already supervised substantial discovery, or if it has made any consequential rulings on discovery (for purposes of evaluating exceptional circumstances, the Court does not consider the Illinois court's rulings on privilege and scope consequential). The Overall Receiver cites the length of the docket in the Illinois case as proof of its complexity. While the length of the docket is something other courts have considered when determining complexity, the Court does not find it a very persuasive argument. See The Dispatch Printing Co., 2016 WL 335753, at *3.

That said, the Court has experience with receivership cases, Chapter 11 cases, and litigation in and outside bankruptcy court to avoid conveyances that allegedly defrauded investors, creditors and lenders. These disputes are fact intensive and specific. They require considerable discovery to follow conveyances and the consideration, if any, supporting the conveyances. When a defendant/debtor is accused of operating a scheme to defraud, or of engaging in transfers to trick multiple creditors, discovery oftentimes uncovers common practices, methods and participants. These complexities and commonalities make resolution of these cases by a single court preferable to litigation in multiple courts.

NeJame Law anticipates that the Overall Receiver is preparing an action to recover the Property. That action will likely be brought in the Northern District of Illinois. It makes sense for this discovery dispute to be handled by that court, which is in a better

position to understand the full scope of the issues concerning the Patel Defendants and their alleged activities. NeJame Law will be only minimally burdened by having to litigate the motion to quash in the Northern District of Illinois. Its lawyers have appeared in the very case from which the subpoena issued. It has filed a proof of claim in anticipation of having to defend the transfer of the Property, it has requested permission to intervene in that case, and it has retained counsel to represent it in that case. After considering and balancing these considerations, the Court finds that exceptional circumstances warrant the transfer of this case to the Northern District of Illinois.

Accordingly, the Motion to Transfer Subpoena Dispute (Doc. 3) is **GRANTED**. The Clerk is **DIRECTED** to **TRANSFER** this action to the Northern District of Illinois, Chicago Division. The Court will **CARRY** NeJame Law P.A.'s Rule 45 Motion to Quash (Doc. 1) for resolution by the Northern District of Illinois.

**DONE** and **ORDERED** in Orlando, Florida on April 21, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record