**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SUBPOENA UPON NEJAME LAW, PA., | ) | No. 16-cv-4619 |
| a non-party in an action pending in the U.S. | ) | |
| District Court for the Northern District of | ) | Hon. Amy J. St. Eve |
| Illinois entitled | ) | |
| FIRST FARMERS FINANCIAL | ) | |
| LITIGATION | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

NeJame Law, P.A. ("NeJame"), has moved the Court to quash the Overall Receiver's subpoena to produce documents and electronically stored information pursuant to Federal Rule of Civil Procedure 45(d)(3)(A). For the following reasons, the Court denies NeJame's motion to quash the Overall Receiver's subpoena. Instead, the Court modifies the subpoena as set forth below.

## BACKGROUND

Pennant is a "Registered Investment Advisor" in the business of acquiring loans on behalf of its clients guaranteed by the United States Department of Agriculture ("USDA") or the United States Small Business Administration ("SBA") from third party USDA and SBA approved lenders, such as First Farmers Financial, LLC ("First Farmers"). (R. 525-1, 14-cv-7581, Third Am. Compl., at ¶¶ 1, 27.) From June 2013 to August 2014, Pennant purchased the federally guaranteed portions of 26 separate loans originated by First Farmers for approximately $180 million. (*Id.* ¶¶ 30, 46.) Pennant acquired these loans on behalf of community banks, retirement plans, municipalities and government entities, and labor unions, among other entities. (*Id.* ¶ 27.) In September 2014, Pennant allegedly discovered that none of the 26 borrowers of the

First Farmers' loans actually existed, and that the loans were allegedly part of a massive fraud perpetrated by Nikesh Patel, Trisha Patel (collectively, the "Patels"), and Timothy Fisher through First Farmers. (*Id.* ¶¶ 37, 46.) Thus, countless investors that invested through Pennant and its clients have suffered significant potential losses.

On September 29, 2014, Pennant filed its original complaint against First Farmers and associated individuals and entities, including the Patels and Alena Hospitality, LLC (collectively, "Defendants"). (R. 525-1, 14-cv-7581, Third Am. Compl.) At the request of the parties, on October 14, 2014, the Court entered an agreed preliminary injunction freezing certain of Defendants' assets. (R. 22, 14-cv-7581, at 2.) On November 10, 2014, the Court then entered an agreed order designating the Nanosky Receiver to exercise control over certain assets of the Defendant Entities. (R. 29, 14-cv-7581, Initial Receiver Order, at ¶¶ 2, 4–5, 8.) On April 23, 2015, the Court entered the Amended Receiver Order, which gave Mr. Nanosky continued control over those assets. (R. 122, 14-cv-7581, ¶¶ 4–5.) The Amended Receiver Order also appointed Patrick Cavanaugh as the Overall Receiver, which includes "all assets other than those assets entrusted to the Nanosky Receivership Estate." (*Id.* at ¶ 24(b).) On July 8, 2015, Pennant filed its unopposed Second Amended Complaint. (R. 182, 14-cv-7581, Sec. Am. Compl.) Pennant then moved this Court for leave to file its Third Amended Complaint on September 30, 2015, and the Court granted that motion. (R. 525, 14-cv-7581; R. 827, 14-cv-7581.)

NeJame is an Orlando, Florida based law firm that "has represented Nikesh Patel and all of the so-called Patel entities, including, but not limited to, First Farmers Financial, LLC since Patel's arrest in the Middle District of Florida in September 2014, in connection with an alleged $170 million USDA fraudulent loan scheme charged in an information filed by the U.S. Attorney's office for the Northern District of Illinois." (R. 1, 16-cv-4619, at 1.)

2

On January 21, 2016, the Overall Receiver served a subpoena on NeJame in the Middle District of Florida. (R. 1-1, 16-cv-4619, Subpoena.). On April 21, 2016, Judge Smith of the Middle District of Florida granted the Overall Receiver's motion to transfer the current subpoena dispute to this Court. (R. 16, 16-cv-4619.) According to the Overall Receiver, "[i]n accordance with several orders entered in the Receivership Case, the Receivers have been actively investigating the financial affairs of Patel and the Entity Defendants[1], and they have received authority from [this Court] to issue and serve subpoenas in the course of that investigation. The NeJame Subpoena . . . is one such subpoena." (R. 10, 16-cv-4619, at 2 (citations omitted).) The Overall Receiver asserts that "[t]he scope of the NeJame Subpoena serves the purpose of the Receivers' investigation into the financial affairs of the Patel and the Entity Defendants. That investigation includes the transfers of real estate and cash from Patel and the Entity Defendants to NeJame." (R. 10, 16-cv-4619, at 3.) Specifically, the Overall Receiver asserts that its investigation has "revealed that Patel's fraud extended to his 2012 acquisition of the property located at 7411 International Drive, Orlando, Florida (the "7411 Property")." (R. 10, 16-cv-4619, at 7.) As such, the subpoena seeks, in relevant part, the production of twenty-four categories of documents revolving around NeJame's dealings with the Patels, First Farmers, related third parties, and the 7411 Property. Specifically, the subpoena seeks documents and communications relating to NeJame's relationship with the Patels, First Farmers, and First Farmers entities; real and personal property transfers among NeJame, the Patels, First Farmers, First Farmers entities, and related third parties; the purchase, transfer, sale, improvements, and tenants of 7411 property; and any joint business ventures or investments in which NeJame, the

---

[1] The "Entity Defendants" are First Farmers Financial, LLC; Alena Hospitality, LLC; Alena Laboratories, LLC; Alena Aviation, LLC; Able Connection, LLC; NPSSS, LLC; Kuber Capital Funding, LLC; Kuber Consulting; Suri Hospitality, LLC; Suri Hospitality International, LLC; Translucent Entertainment, LLC; Alena Production, LLC; and ASL Pictures, LLC. (R. 220, 14-cv-7581, at 1 n.2.)

Patels, First Farmers, and any First Farmers entities participated together. (R. 1-1, 16-cv-4619, at 6–9.) Ultimately, the Overall Receiver is attempting to identify and collect assets on behalf of the victim investors.

NeJame, however, moves to quash the Overall Receiver's subpoena pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(ii)–(iv). (R. 1, 16-cv-4619.). Specifically, NeJame asserts that the Court should quash the subpoena, as it (a) requires compliance beyond the one-hundred mile geographic limit; (b) requires disclosure of privileged or other protected matters; and (c) subjects NeJame to undue burden. The Court addresses each argument in turn.

## LEGAL STANDARD

Quashing subpoenas is within the district court's sound discretion. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F. 3d 1068, 1081 (7th Cir. 2016); *see also Malibu Media, LLC v. Doe*, No. 13 C 8484, 2014 WL 1228383, at *1 (N.D. Ill. Mar. 24, 2014) (citing *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992)). The party seeking to quash a subpoena bears the burden of meeting the requirements articulated under Rule 45(d)(3). *See Malibu Media, LLC*, 2014 WL 1228383, at *1.

Federal Rule of Civil Procedure 45(d)(3)(A) provides as follows:

A) *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    i)    fails to allow a reasonable time to comply;

    ii)    requires a person to comply beyond the geographical limits specified in Rule 45(c);

    iii)    requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

    iv)    subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). Further, Rule 45(c)(2)(A) provides the "geographical limits"

described in Rule 45(d)(3)(A)(ii), stating that "[a] subpoena may command production of documents, electronically stored information or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(2)(A); *see also Glacier Films (USA), Inc. v. Does 1-29*, Case No. 15-cv-4016, 2015 WL 8989217, at *1 (N.D. Ill. Dec. 15, 2015); *SEC v. Hyatt*, 621 F. 3d 687, 694 (7th Cir. 2010). "The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26(b)(1)." *Chavez v. Hat World, Inc.*, No. 12-cv-5563, 2013 WL 1810137, at *2 (N.D. Ill. April. 29, 2013). Pursuant to Rule 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

## ANALYSIS

### I. Geographical Limits

NeJame correctly asserts that the subpoena violates geographical limits set forth in Rule 45(c). Specifically, NeJame argues that "[t]he subpoena is returnable at the offices of the Overall Receiver's attorneys located in Chicago, Illinois, of which this court can take judicial notice as being more than 100 miles from the Middle District of Florida." (R. 1, 16-cv-4619, at 3.) NeJame further asserts that it "does not maintained [sic] an office in the City of Chicago or within 100 miles of Chicago or anywhere in the State of Illinois nor do any of its attorneys reside, are employed or regularly transact business in the City of Chicago or within 100 miles of

5

Chicago or anywhere in the State of Illinois. NeJame does not regularly transact business in the City of Chicago or within 100 miles of Chicago or anywhere in the State of Illinois." (*Id*.)

The Overall Receiver, however, now "agrees to modify the NeJame Subpoena to provide for compliance and production at the offices of his Orlando counsel, Shutts & Bowen LLP." (R. 10, 16-cv-4619, at 13.) The Court adopts the Overall Receiver's suggestion and modifies the subpoena accordingly. In light of this modification, the subpoena now satisfies the one hundred mile requirement. Thus, quashing the subpoena under Rule 45's geographical limits is unnecessary.

## II. Privileged Materials

NeJame also moves to quash the subpoena on the basis that it requires the disclosure of privileged matters. Indeed, NeJame conclusively states that "[t]he subpoena requires the disclosure of attorney-client privilege materials as well as work product materials." (R. 1, 16-cv-4619, at 3.) NeJame further asserts that "[t]here is no indication that Patel or any of the [First Farmers] entities that NeJame has represented have waived their respective attorney-client privileges as to their communications with NeJame." (*Id*.)

A third party recipient of a subpoena may move to quash the subpoena on the grounds that it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." *See* Fed. R. Civ. P. 45(d)(3)(A)(iii). NeJame bears the burden of establishing that "all of the requirements for invoking the attorney-client privilege have been met." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) (citing *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *United States v. Lawless*, 709 F. 2d 485, 487 (7th Cir. 1983) ("The party seeking to invoke the [attorney-client] privilege has the burden of establishing all of its essential elements.") (citation omitted)). Importantly, "[t]he inquiry into whether documents are subject

to a privilege is a highly fact-specific one. 'Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies.'" *Id.* (quoting *Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990)). As such, NeJame's "claim of privilege must be express and it must describe the nature of the withheld [information] in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 246 (N.D. Ill. Aug. 9, 2011) (citation and quotation marks omitted). Ultimately, "[t]he claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable." *Lawless*, 709 F.2d at 487 (citing *First State Bank*, 691 F.2d at 335); *see also In re Grand Jury Proceedings*, 2202 F.3d at 571 (citing *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992); *Lawless*, 709 F.2d at 487).

NeJame's one-paragraph, conclusory assertion of privilege amounts to a "blanket claim of privilege" that is "unacceptable." *Lawless*, 709 F.2d at 487. NeJame has not submitted any documents it claims are privileged for the Court's review or described any categories of privileged documents. Indeed, NeJame maintains, in relevant part, that "a facial examination of the subpoena reveals that the 24 Requests are . . . unabashedly invasive of privilege[.]" (R. 15, 16-cv-4619, at 4.) Given the highly fact-intensive nature of the attorney-client privilege analysis, however, a "facial examination" is insufficient. Accordingly, quashing the subpoena on the grounds of privileged material is inappropriate. Given NeJame's representation of Patel and the related entities, some of the requested documents may be privileged. If so, NeJame can submit an appropriate privilege log consistent with Federal Rule of Civil Procedure 26(b)(5)(A).

7

**III.     Undue Burden**

Finally, NeJame asserts that the subpoena imposes an undue burden.  Specifically, NeJame contends that "[a] review of the 24 separately numbered Requests in the subpoena reveals an excessively burdensome demand for documents related to 70 or more entities, many of which were Patel related clients of NeJame."  (R. 1, 16-cv-4619, at 4.)  The Overall Receiver, however, retorts that "[b]alanced against the Overall Receiver's clear need for information in order to administer the Estates for the benefit of Patel's victims is nothing more than the Motion's vague averments of undue burden."  (R. 10, 16-cv-4619, at 17.)

NeJame has the burden of demonstrating an undue burden.  *Pacific Century Int'l, Ltd. v. Does 1-37*, Nos. 12 C 1057, 12 C 1080, 12 C 1083, 12 C 1085, 12 C 1086, 12 C 1088, 2012 WL 1072312, at *2 (N.D. Ill. March 30, 2012) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant.") (citing *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008).  Notably, "[a] court can 'modify or exclude portions of a subpoena only if the [movant] carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad.'"  *EEOC v. Konica Minolta Business Solutions U.S.A., Inc.*, 639 F.3d 366, 371 (7th Cir. 2011) (citing *EEOC v. United Airlines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002); *FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980)).  "Needless to say, any subpoena places a burden on the person to whom it is directed.  Time must be taken from normal activities and resources must be committed to gathering the information necessary to comply."  *Shaffner*, 626 F.2d at 38.  "When determining if a burden is *undue*," however, "the court must ask whether 'the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it.'"  *Id*. (emphasis added) (citing *Nw. Mem'l. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)).  As noted

earlier, "[w]hen making that inquiry, the court should consider 'the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Id.* (citing *Williams*, 2008 WL 68680, at *3).

NeJame has failed to articulate how the subpoenaed materials impose an undue burden. They are directly relevant to the needs of this case and to assist the Overall Receiver in carrying out his fiduciary duty to recover, manage, and maintain the over $150 million of the Estate that was fraudulently obtained from the investors in this case. NeJame has failed to convince the Court otherwise.

## **CONCLUSION**

For the foregoing reasons, the Court denies NeJame's motion to quash the subpoena. The Court modifies the subpoena to require delivery to the Overall Receiver's Orlando, Florida office. NeJame must comply with the subpoena on or before July 1, 2016.

**DATED: June 3, 2016**                                        **ENTERED**

_____
AMY J. ST. EVE
U.S. District Court Judge